OPINION
This is an accelerated calendar appeal submitted to the court on the briefs of the parties. Appellant, Terry A. Gambill, appeals from a final judgment of the Lake County Court of Common Pleas awarding appellees, William A. and Kim L. Brucken, prejudgment interest.
The following facts are relevant to this appeal. On July 26, 1999, appellees filed a complaint naming appellant, Mary Ann Hubbard ("Hubbard"), and Smythe Cramer Co. ("Smythe Cramer") as defendants. As grounds for their complaint, appellees alleged that they had purchased a home owned by appellant, and that shortly after taking possession, they noticed the skylights in the pool area were leaking. Upon inspection, they discovered that the wood framing surrounding the skylights was rotting and in need of replacement.
Given the nature and extent of the damage, appellees determined that the leak had existed for some time prior to the sale of the home. Although this was an "as is" purchase, appellees claimed that appellant had fraudulently misrepresented and purposefully concealed the condition of the skylights in violation of R.C. 5302.30. Moreover, they also alleged that Hubbard, acting within the course and scope of her employment with Smythe Cramer, had encouraged appellant to conceal any evidence of the leak.[1]
Appellant filed an answer denying the allegations in the complaint. After several months of discovery, the matter proceeded to a jury trial on September 25, 2000. At the conclusion of the trial, the jury returned a verdict in favor of appellees and against appellant in the amount of $56,613.[2]
On October 10, 2000, appellees filed a motion for prejudgment interest pursuant to R.C. 1343.03(C), alleging that appellant had failed to make a good faith effort to negotiate a settlement. The trial court conducted a hearing on appellees' motion on January 26, 2001. In a judgment entry dated February 9, 2001, the trial court awarded prejudgment interest to appellees, concluding that appellant had failed to rationally evaluate his risks and potential liability.
From this judgment, appellant filed a timely notice of appeal with this court. He now argues under his sole assignment of error that the trial court abused its discretion in awarding appellees prejudgment interest because the court could not have reasonably found that he, as the party required to pay the judgment, failed to make a good faith effort to settle the case. Specifically, appellant maintains the following: (1) that he fully cooperated during the discovery process; (2) that he rationally evaluated his risks and potential liability; (3) that he did not attempt to unnecessarily delay any of the proceedings; and (4) that his $25,000 settlement offer was made in good faith and was based on an objectively reasonable belief that he had no liability.[3]
R.C. 1343.03(C), which governs the awarding of prejudgment in a tort action, provides:
 "Interest on a judgment, decree, or order for the payment of money rendered in a civil action based on tortious conduct and not settled by agreement of the parties, shall be computed from the date the cause of action accrued to the date on which the money is paid, if, upon motion of any party to the action, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case."
 "The purpose of R.C. 1343.03(C) is `to encourage litigants to make a good faith effort to settle their case, thereby conserving legal resources and promoting judicial economy.'" Cek v. Rdhot (Aug. 4, 2000), Lake App. No. 99-L-023, unreported, 2000 Ohio App. LEXIS 3539, at 11, quoting Peyko v. Frederick (1986), 25 Ohio St.3d 164, 167. In that regard, the Supreme Court of Ohio has held that R.C. 1343.03 establishes certain requirements that must be met before a court can award prejudgment interest. First, the party seeking prejudgment interest must petition the trial court within fourteen days after the entry of judgment. Next, the trial court must hold a hearing on the motion. Third, before awarding prejudgment interest, the court must find that the party required to pay the judgment failed to make a good faith effort to settle the case. Finally, the trial court must find that the party to whom the judgment is to be paid did not fail to make a good faith effort to settle the case. See Moskovitz v. Mt. Sinai Med. Ctr. (1994), 69 Ohio St.3d 638, 658. See, also, Cek at 11-12.
The decision to award prejudgment interest is well within the sound discretion of the trial court. Loder v. Burger (1996), 113 Ohio App.3d 669,674. Accordingly, such determinations will not be overturned on appeal absent an abuse of that discretion. Id. at 674.
In Kalain v. Smith (1986), 25 Ohio St.3d 157, syllabus, the Supreme Court of Ohio crafted a standard that courts are to use when considering motions for prejudgment interest:
 "A party has not `failed to make a good faith effort to settle' under R.C. 1343.03(C) if he has (1) fully cooperated in discovery proceedings, (2) rationally evaluated his risks and potential liability, (3) not attempted to unnecessarily delay any of the proceedings, and (4) made a good faith monetary settlement offer or responded in good faith to an offer from the other party. If a party has a good faith, objectively reasonable belief that he has no liability, he need not make a monetary settlement offer."
 Therefore, under Kalain, the petitioning party has the burden of showing that the nonmoving party failed to make a good faith effort to settle the case. Loder at 674. At the same time, the petitioning party must also present evidence that he or she made a reasonable settlement offer, in light of such factors as the nature of the case, the injuries involved, and the applicable law. Cek at 14. However, "[i]n determining whether the efforts are reasonable, the trial court is not limited to the evidence presented at the prejudgment interest hearing." Borucki v. Skiffey
(Sept. 14, 2001), Trumbull App. Nos. 2000-T-0029 and 2000-T-0057, unreported, 2001 Ohio App. LEXIS 4129, at 11-12. Rather, "[t]he court also may review the evidence presented at trial, as well as its prior rulings and jury instructions * * *." Id. at 12.
Turning to the case at bar, there is no question that appellant fully cooperated in the discovery proceedings, and that he never attempted to unnecessarily delay any of the proceedings. Instead, the trial court focused on the third and fourth prongs in Kalain; appellant's failure to rationally evaluate his risks and potential liability, and his failure to either make a good faith settlement offer or respond in good faith to appellees' offers.
Specifically, the trial court concluded that "[t]he evidence as a whole leads this Court to conclude that Defendant Gambill failed to evaluate his risks." Underlying this conclusion was the court's finding that appellant had previously sued the person he had purchased the home from for the same defects. And while appellant argued that he had promptly corrected the problem, the trial court found that the evidence introduced during the trial indicated that the defects were so pervasive that they became apparent to appellees soon after taking possession of the house.
Furthermore, the court also found that the evidence of water damage had been concealed, and that no disclosure was made to appellees. As we noted earlier, without a transcript of the trial, we must presume that the jury found that appellant acted inappropriately, and that the jury correctly assessed the amount of damage when reaching its award. Knapp, supra.
Based on the evidence, this court cannot say that the trial court abused its discretion in granting prejudgment interest to appellees. Appellant's involvement in the prior litigation, his attempts to conceal the damage, and his failure to inform appellee of the prior damage is certainly competent, credible evidence that he had not rationally evaluated his risks and potential liabilities. Detelich v. Gecik (1993),90 Ohio App.3d 793, 799.
Moreover, with his prior knowledge of the damage, and his concealment thereof, appellant cannot now argue the "as is" condition of sale contained in the parties contract somehow absolved of him wrongdoing. The phrase "as is" is defined as "[i]n the existing condition without modification[.]" Black's Law Dictionary (7 Abridged Ed. 2000) 86. When used in the context of the sale of property, "`as is' means that the property is sold in its existing condition, and use of the phrase * * * relieves the seller from liability for defects in that condition." Id.
Nevertheless, an "as is" sale will not excuse the concealment or misrepresentation by a homeowner of a known defect. Black v. Cosentino
(1996), 117 Ohio App.3d 40, 44 (holding that an "as is" provision "cannot be used to bar a claim for fraudulent misrepresentation or fraudulent concealment."). See, also, R.C. 5302.30. Rather, a homeowner is obligated "to disclose material facts which are latent, not readily observable or discoverable through a purchaser's reasonable inspection." Layman v.Binns (1988), 35 Ohio St.3d 176, 178. Accordingly, even appellees' failure to exercise their right to have a professional home inspection could not lead appellant to reasonably believe he had no liability because he actually attempted to conceal the problem by painting the effected area.
We recognize that appellant's last minute offer was not completely removed from the ultimate award given by the jury ($25,000 offer compared to a $56,613 award). However, this is simply "`circumstantial evidence of the reasonableness of that party's evaluation * * * [and] falls far short of demonstrating that such party made a good faith effort to settle or that the adverse party failed to do so.'" Myres v. Stucke (Oct. 29, 1999), Trumbull App. No. 98-T-0132, unreported, 1999 Ohio App. LEXIS 5100, at 7, quoting Black v. Bell (1984), 20 Ohio App.3d 84, 88. See, also, Loder at 675-676. Thus, the slight proximity of the jury's verdict and appellant's offer, while relevant, was not the sole factor for the trial judge to consider. Put another way, that factor alone does not supplant the trial court's finding that appellant failed to properly evaluate his risks and potential liability.
As for appellees' settlement efforts, the record shows that during a July 10, 2000 pre-trial, appellees made an offer of $300,000, to which appellant never responded. Between then and September 25, 2000, the parties had no further discussions concerning settlement. However, as we noted earlier, on the first day of trial, the parties once more discussed settlement options. At that time, appellees reduced their initial offer to $150,000. Appellant made his first and only counter offer of $25,000. Appellees rejected appellant's proposed settlement, and lowered their offer to $130,000. Appellant once again rejected appellees' offer, and the case proceeded to trial.
Given these circumstances, appellees clearly made every effort to resolve this case prior to trial. As the trial court noted in its February 9, 2001 judgment entry, "[appellant's] steadfast refusal to offer anything until the date of trial was not an inducement for [appellees] to throw out numbers, ad infintum, in the hope of finding one which would be mutually agreeable. To place all of the responsibility on [appellees] to present demands, when no offers were forthcoming from [appellant], is unrealistic and unreasonable."
Based on the foregoing analysis, appellant's single assignment of error is not well-taken. The judgment of the trial court is affirmed.
NADER, J., GRENDELL, J., concur.
[1] Neither Hubbard nor Smythe Cramer has appealed the trial court's judgment.
[2] The jury also returned a verdict in favor of appellees and against Hubbard and Smythe Cramer in the amount of $16,500.
[3] Although a transcript of the prejudgment interest hearing has been filed with this court, no transcript of the actual trial was submitted. Accordingly, because neither party challenges the jury's verdict, we will presume the regularity of the proceedings below, especially in reference to the amount of damages awarded. Knapp v. Edwards Laboratories (1980),61 Ohio St.2d 197, 199.