DECISION AND JUDGMENT ENTRY
Appellant Michael Masten appeals the judgment of the Hocking County Municipal Court, which granted partial summary judgment to appellee Richard Brenick. Appellant purchased a house from appellee Richard Brenick in 1996. Appellant sued appellee in 1997, seeking to recover the costs of window coverings that he alleged were to be included with the sale of the house, as well as the expense of repairing a wet basement. The trial court, based on its finding, that the property was purchased by appellant "as is," and that the wet basement could not, therefore, be considered a "latent defect," and concluded that the doctrine of caveat emptor precluded recovery by appellant on this basis. The trial court also found that appellant had failed to adequately demonstrate and prove any fraud or misrepresentation on the part of the appellee Brenick, as was required of appellant by Civ.R. 56. Accordingly, the trial court granted summary judgment to appellee on this claim. We affirm the decision of the trial court.
 STATEMENT OF THE CASE
Appellant purchased the house located at 203 Mae Street, Logan, Ohio, in 1996 from appellee Richard Brenick. Brenick had purchased the house in 1993 from Steve Good, whose company, Good Construction, built the house in the summer of 1993. Appellee Sandy Maniskas was the real estate broker on the sale from Good to Brenick, as well as on the subsequent sale from Brenick to appellant.
At the time appellant made his written "Offer to Purchase" on January 22, 1996, Maniskas supplied him with a copy of a "Residential Property Disclosure Form," prepared earlier by Brenick. That form did not indicate any water leakage, excess dampness or other defects in the finished basement of the subject property. Appellant moved into the house on April 6, 1996. In May 1996, appellant noticed that the carpet in one corner of the basement was wet. Appellant did not speak with Brenick, Maniskas or Good at that time about this problem. In January 1997, appellant called Maniskas, and in April 1997, he spoke with Good about drainage problems with the house.
Appellant sued Brenick on December 17, 1997. His complaint, filed in the Hocking County Municipal Court, contained three claims. The First Claim of the complaint alleged that Brenick violated the purchase agreement by not leaving certain window coverings in the house. The Second Claim of the complaint alleged that Brenick made false and fraudulent misrepresentations. The Third Claim of the complaint alleged, in the alternative to the Second Claim, that Brenick negligently misrepresented the condition of the premises. Both the Second and Third Claims sought damages for the cost of waterproofing the basement.
Brenick joined Good as a third party defendant, seeking indemnification from Good for any damages awarded against him as a result of appellant's claims regarding the wet basement claim. After deposing Maniskas, appellant also joined her as a defendant, alleging that she concealed or misrepresented the condition of the basement of this house. Good, Maniskas and Brenick all moved for summary judgment on the respective claims against them. On February 17, 1999, the trial court granted summary judgments in favor of Good and Maniskas. Brenick did not appeal the dismissal of his third party claim against Steve Good.
The trial court also granted partial summary judgment in favor of Brenick on appellant's second and third claims of misrepresentation regarding the basement. The court did find that material differences in fact precluded summary judgment on appellant's breach of contract claim against Brenick regarding the missing window coverings and set that claim for trial.
The trial court heard count one of appellant's complaint, the breach of contract claim relating to the missing window coverings, on June 10, 1999, and issued a final decision on June 29, 1999. The trial court found that appellant had no valid claim against Brenick for the missing window coverings. That entry also reaffirmed the summary judgments previously granted to Brenick and Maniskas based on the misrepresentation claims of appellant regarding the basement. From this final order, appellant filed his timely appeal, raising a single assignment of error for our consideration:
ASSIGNMENT OF ERROR:
 THE TRIAL COURT ERRED IN GRANTING PARTIAL SUMMARY JUDGMENT TO DEFENDANT BRENICK ON THE SECOND AND THIRD CLAIMS OF PLAINTIFF'S SECOND AMENDED COMPLAINT.
 I
At the outset, we note that appellant did not appeal the grant of summary judgment to Maniskas. Neither appellee Maniskas, nor appellee Steve Good entered an appearance or briefed any of the issues in this appeal.
Our standard of review of an order of summary judgment, granted pursuant to a Civ.R. 56 motion, is de novo. Brown v. Scioto Cty. Bd. ofCommrs. (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153, 1158. Summary judgment is appropriate where the moving party demonstrates the following:
 (1) No genuine issue as to any material fact remains to be litigated;
 (2) The moving party is entitled to judgment as a matter of law; and
 (3) It appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.
Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327, 364 N.E.2d 267,274.
The moving party bears the burden of proving that no genuine issue of material fact exists. Dresher v. Burt (1996), 75 Ohio St.3d 280, 292,662 N.E.2d 264, 273; Mitseff v. Wheeler (1988), 38 Ohio St.3d 112, 115,526 N.E.2d 798, 801. If the moving party satisfies this initial burden, then the burden shifts to the non-moving party to present evidence that genuine issues of material fact exist. Dresher, 75 Ohio St.3d at 293,662 N.E.2d at 274. It is not sufficient for one opposing a motion for summary judgment to merely rely on the allegations contained in his pleadings to sustain his burden. Id.; Civ.R. 56(E).
 II
Appellant claims that Brenick materially misrepresented the condition of the basement through the "Residential Property Disclosure Form." Brenick testified at his deposition that he recalled two incidents where water had appeared in the basement. Brenick testified that, shortly after he moved into the house, Good Construction broke a drainpipe connection while backfilling around the foundation, causing water to enter the basement. Good's employees repaired the drainpipe, and Brenick noticed no further water problems for a number of months.
Brenick testified that the second incident occurred in either May or June 1994, when Good Construction sowed grass seed in the yard, covering the seed with straw. A storm blew the straw into the gutters, clogging the gutters and downspouts of the house, clearly a relatively unique set of circumstances, unlikely to reoccur. Rainwater poured into the basement. Good's employees helped Brenick dry out the basement. They also cleaned and rerouted the drainpipes and installed a new drain behind the garage portion of the house. After the second incident, Brenick testified that he experienced no further problems with water in the basement. When he listed the house for sale with Maniskas Real Estate in March 1995, he did not mention these earlier problems on the disclosure form. He stated that he considered the earlier repairs as warranty work on the new house. Hence, he apparently understood the question on the disclosure form to refer to any repairs or alterations that he made after accepting the house from Good Construction.
Appellant admitted in his deposition that he did not speak to Brenick about the condition of the house prior to closing. Appellant later claimed in an affidavit, submitted in response to the summary judgment motions, that he relied upon statements by Maniskas that there were no water problems with the basement. Appellant argues that Maniskas misled him by failing to reveal the existence of water problems in the basement.
Maniskas testified at her deposition that she was aware of the problems Brenick had experienced with water in the basement during construction. Brenick would call her because Good was difficult to reach by telephone. She contacted Good Construction for Brenick in the spring of 1994 when straw clogged his drains and flooded the basement. When Brenick listed the property with her in March 1995, Maniskas asked him if he had experienced any further problems with water in the basement. Brenick replied that he had experienced no such problems since Good Construction had repaired and rerouted the drainage system subsequent to the second incident, involving the straw-clogged gutters and downspouts. Shortly after Brenick listed the house, Maniskas did a "walk-through" and noticed carpeting, a computer system, and a sofa in the finished basement. She did not notice any obvious signs of water damage, such as stained carpet or drywall. Nor did she notice any sign of water damage when she accompanied appellant on his inspections of the property in early 1996.
Maniskas, in her deposition, recalled discussing Brenick's water problems with the appellant during one of his inspections of the house. Appellant now disputes that this discussion ever took place.
In response to the motions for summary judgment, appellant also attempted to submit the affidavits of James Cooper, the owner of a basement waterproofing company, and Mark McCann, a contractor. Cooper inspected the house in June 1997 and concluded that the wet basement problem was the result of defective parging, or waterproofing, on the exterior wall and an inadequate footer drain. McCann inspected the house in September 1997 and concluded that the exterior waterproofing did not meet industry-building codes.
In response to the finding by the trial court that the doctrine of caveat emptor precluded his recovery, appellant argues that these water leakage problems were not open to observation or discoverable upon reasonable inspection. Further, appellant claims Brenick replaced certain damaged portions of the carpet pad with a new pad. This, he concludes, raises a material question of fact as to whether the water problem was a latent defect which was fraudulently concealed and misrepresented by appellee.
 III
Sellers of residential real estate are required to prepare a "Residential Property Disclosure Form." R.C. 5302.30. The disclosures made by a seller on this form must be made in good faith, which "means honesty in fact in a transaction." R.C. 5302.30(A)(1). Compliance with the statute does not eliminate a seller's duty to disclose known defects. Schlecht v. Helton (Jan. 16, 1997), Cuyahoga App. No. 70582, unreported, citing Davis v. Kempfer (Apr. 10, 1996), Union App. No. 14-95-31, unreported.
While R.C. 5302.30 imposes a duty upon the seller to disclose defects of which he has actual knowledge, the statute does not include any penalty for a seller's failure to disclose such known defects. The only remedy provided to a buyer under the statute is recision of the sales agreement before transfer. Wilson v. Safarek (1999), 131 Ohio App.3d 622,723 N.E.2d 181. Appellant concedes that he may not base a separate action on the disclosure form. Appellant argues, however, that the failure to disclose a defect on the form is evidence of Brenick's fraudulent misrepresentation regarding the basement. Appellant cites Black v.Cosentino (1996), 117 Ohio App.3d 40, 689 N.E.2d 1001, and Lance v. Bowe
(1994), 98 Ohio App.3d 202, 648 N.E.2d 60, in support of his argument.
In Lance, which predates the enactment of R.C. 5302.30, the buyer asked the seller if the basement was dry. The seller claimed that apart from the fruit cellar (which was damp when the buyers inspected the house), the rest of the basement was dry. After the buyers purchased the house, the basement flooded. When they questioned the seller, she said that when she stated the basement was dry, "it all depended upon what one meant by dry." The appellate court affirmed the award of damages to the buyer, finding that the seller falsely represented the condition of the basement.
In Black, another case that arose prior to the enactment of R.C. 5302.30, the sellers disclosed in the purchase agreement that they had waterproofed the basement in 1984 and that there was a sump pump installed at that time. The sellers did not report any current problems with the basement. The appellate court found these statements should have alerted the buyers to the need for further inspection. Since the buyers failed to prove fraudulent misrepresentation, the court affirmed the grant of summary judgment to the sellers.
Before the enactment of R.C. 5302.30, the Ohio common law governing residential disclosures characterized property defects as either patent or latent. A patent defect is an open and observable defect that an ordinary prudent person would discover upon reasonable inspection. Tiptonv. Nuzum (1992), 84 Ohio App.3d 33, 38, 616 N.E.2d 265, 268. Under the rule of caveat emptor, buyers are responsible for the discovery of patent defects.
 A.
The enactment of R.C. 5302.30 did not eliminate the common law doctrine of caveat emptor. See Belluardo v. Blankenship (June 4, 1998), Cuyahoga App. No. 72601, unreported; Buchanan v. Geneva Chervenic Realty (1996),115 Ohio App.3d 250, 685 N.E.2d 265. The doctrine of caveat emptor is designed to finalize real estate transactions by preventing disappointed real estate buyers from litigating every imperfection existing in residential property. Layman v. Binns (1988), 35 Ohio St.3d 176, 177,519 N.E.2d 642, 644.
While the doctrine of caveat emptor still applies to the sale of residential real property in Ohio, the seller of that property must disclose latent defects that are not readily observable or discoverable through a purchaser's inspection. See Layman and Black, supra.
R.C. 5302.30 requires sellers to disclose only those defects that are within their actual knowledge. See Akl v. Maher (Dec. 30, 1996), Lucas App. No. L-96-125, unreported. The deposition of Brenick indicates that he believed the water problems he experienced in 1994 were the result of ongoing construction. Brenick also indicated that, once the new drain and the rerouted drainpipes had been installed by Good Construction, he presumed that the wet basement problems had been alleviated, since he had no water in the basement after that time.
Under current law, sellers of residential real estate have no duty to inspect their property or otherwise acquire additional knowledge of the defects of their property. Good v. McElhaney (Sept. 30, 1998), Athens App. No. 97CA41, unreported. R.C. 5302.30(D) provides in pertinent part as follows:
 (D) * * * The form prescribed by the director shall be designed to permit the transferor to disclose material matters relating to the physical condition of the property * * * that are within the actual knowledge of the transferor. (Emphasis added.)
See, also, Rose v. Zaring Homes, Inc. (1997), 122 Ohio App.3d 739,702 N.E.2d 952; Montgomery v. Proper (Feb. 14, 1997), Huron App. No. H-96-019, unreported.
In Montgomery, the court noted that the disclosure form is not a substitute for a careful inspection by potential purchasers. Nor, as the trial court noted below, did appellant represent at any time that he relied upon the property disclosure form. Under the statute, the duty to conduct a full inspection falls not upon the seller, but upon the purchaser.
Appellant inspected the house on two occasions before he submitted an offer. Maniskas recalls discussing the water problems with appellant during one of these inspections. The trial court noted that the written purchase agreement contained the following clause:
 [T]his property is being purchased in its present physical condition after examination by the Purchaser and the Purchaser is relying solely upon such examination relative to the condition, value, character and size of the property. (Emphasis added.)
The "present physical condition" clause is substantially equivalent to an "as is" clause. Good, supra; Arbor Village Condominium Assn. v. ArborVillage, Ltd., L.P. (1994), 95 Ohio App.3d 499, 511, 642 N.E.2d 1124,1132. Where a purchaser agrees to accept real property "as is," the seller is relieved of any duty to disclose that the property was in a defective condition. Dennison v. Koba (1993), 86 Ohio App.3d 605, 609,621 N.E.2d 734, 737. Therefore, an "as is" clause in a real estate contract places the risk upon the purchaser as to the existence of defects and relieves the seller of any duty to disclose. Such a clause bars suit for passive nondisclosure. Rogers v. Hill (1998),124 Ohio App.3d 468, 471, 706 N.E.2d 438, 440; Brewer v. Brothers
(1992), 82 Ohio App.3d 148, 151, 611 N.E.2d 492, 494. Therefore, appellant's claim based on such passive nondisclosure must fail, and summary judgment is appropriate.
 B.
The protection afforded a seller by such an "as is" clause is, however, not without limitation.
An "as is" clause cannot be relied upon to bar a claim against a seller for fraudulent misrepresentation or fraudulent concealment. Kaye v.Buehrle (1983), 8 Ohio App.3d 381, 457 N.E.2d 373. As stated in Layman,supra, at the syllabus:
 The doctrine of caveat emptor precludes recovery in an action by the purchaser for a structural defect in real estate where (1) the condition complained of is open to observation or discoverable upon reasonable inspection, (2) the purchaser had the unimpeded opportunity to examine the premises, and (3) there is no fraud on the part of the vendor. [Citation omitted.]
We find that appellant has failed all three tests set forth in Layman. The claimed deficiencies were open to observation by appellant on inspection and were discoverable before closing. For example, in Moravekv. Hornsby (July 14, 1997), Clermont App. No. CA96-12-113, unreported, a grading defect that led to a wet basement was an "open and observable" defect, even in dry weather.
We find that appellant was sufficiently alerted to a possible water problem with the basement. Once alerted to the possible defect, appellant had a duty to inquire further of the property owner or seek the advice of someone with sufficient knowledge to appraise the defect. Tipton,84 Ohio App.3d at 38, 616 N.E.2d at 268.
Appellant makes no claim that Brenick denied him access to the property or precluded his inspection of the subject property in any manner. When a plaintiff claiming fraud in the sale of property has repeated opportunities to inspect the property, he will be charged with the knowledge of conditions that a reasonable inspection would have disclosed. See Eiland v. Coldwell Banker Hunter Realty (1997),122 Ohio App.3d 446, 459, 702 N.E.2d 116, 124. Hence, we agree with the trial court that any defect in the house could not be considered a "latent" defect, which may entitle appellant to some relief. Without such a finding, summary judgment is appropriate.
We must agree with the conclusion of the trial court that appellant failed to support his claim of fraud and/or misrepresentation by Brenick in this transaction. Appellant produced no evidence to support this claim, as he was required to do once the movant for summary judgment had met his burden of proof in support of his motion, pursuant to Civ.R. 56. We must also agree with the trial court that any non-disclosure must fail to rise to the level of fraud, because the defect cannot be considered latent under these circumstances. It could have been detected by proper inspection by the appellant. See Layman, 35 Ohio St.3d at 178,519 N.E.2d at 644-645.
Accordingly, finding no merit in appellant's sole assignment of error, we AFFIRM the decision of the trial court.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Hocking County Municipal Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
David T. Evans, Judge.
Kline, J. Concurs in Judgment Only.
Harsha, J. Dissents.